UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

:

UNITED STATES OF AMERICA

:

- v. -

:

BRANDON BECKER,                                    S3 19 Cr. 704 (LAP)

:

Defendant.

:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X


**GOVERNMENT'S REPLY MEMORANDUM
IN SUPPORT OF ITS INITIAL MOTIONS *IN LIMINE***

**AND**

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS
SUPPLEMENTAL MOTION *IN LIMINE***


DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York,
Attorney for the United States
of America


DAVID RAYMOND LEWIS
VLADISLAV VAINBERG
SARAH LAI
*Assistant United States Attorneys*
 - Of Counsel –

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

    A.   The Government's Initial Motions *In Limine* ..............................................................1

    B.   The Government's Supplemental Motion *In Limine* ..............................................2

ARGUMENT ............................................................................................................................. 2

  I.  The Government's Initial Motions *In Limine* Should Be Granted...............................2

    A.   Evidence that the Defendant Used "Signers" and Sham Companies for CardReady Customers Other Than E.M. Systems Is Admissible As Direct Evidence And Under Rule 404(b) ......................................................................................................3

       1. The Proffered Evidence Is Admissible as Direct Evidence of the Charged Conspiracy ..................................................................................................... 3

       2. In The Alternative, The Evidence Is Admissible Under Rule 404(b).......................... 6

    B.   The Defendant's and a Co-conspirator's Threats to a Testifying Co-Conspirator to Prevent Exposure of the Scheme Should Be Admitted........................................8

    C.   The Defendant Should Be Precluded from Offering Evidence that the Defendant Submitted Legitimate Merchant Applications ......................................................8

    D.   The Defendant Should Be Precluded from Interposing His Victims' Payments Or Acceptance Of Claims As A Defense To Fraudulent Claims .............................10

    E.   The Defendant Does Not Object to Precluding Evidence that Many of the Defrauded Consumers Have Been Made Whole by Third Parties......................................11

    F.   The Defendant Should Be Precluded from Offering Evidence Concerning the Commonness of Similar Misconduct by Other Actors in the Payment Processing Industry...................................................................................................................12

    G.   The Defendant Does Not Object to Precluding Any Documents Not Timely Produced Prior to Trial ...........................................................................................................13

  II.  As a Supplemental Motion *In Limine,* the Government Seeks Admission of Evidence of Three Instances of the Defendant Engaging in Witness Tampering and Suborning False Testimony ...........................................................................................................13

    A.   Relevant Facts........................................................................................................14

       1. The Defendant's Witness Tampering Regarding Potential Witness-1, in Connection With This Criminal Trial ...................................................................... 14

       2. Becker Induced a Co-Conspirator, Who Is Expected to Testify at Trial, to Falsely Minimize Becker's Role in the EMS Scheme When That Co-Conspirator Was Interviewed by the FTC ................................................................................ 15

3. Becker Induced Another Co-Conspirator, Who Is Also Expected to Testify at Trial, to Falsely Minimize Becker's Role at CardReady When Providing Sworn Deposition Testimony in a Civil Case ........................................................................................ 16

B. Applicable Law ........................................................................................................... 17

C. The Evidence of Each of the Four Instances of Witness Intimidation and/or Witness Tampering Should Be Admitted .................................................................................. 18

1. The Defendant's Threats Against CW-1 Are Admissible .............................................. 18

2. The Defendant's Witness Tampering With Respect to Potential Witness-1 Is Admissible .................................................................................................................. 20

3. The Defendant's Successful Efforts to Persuade a Co-Conspirator to Falsely Minimize Becker's Role in the EMS Scheme When Testifying to the FTC Should Be Admitted 21

4. Becker's Subornation of Perjury, Leading  CW-3 to Falsely Minimize Becker's Role at CardReady In a Sworn Deposition by a Judgment Debtor, Is Also Admissible ........... 21

CONCLUSION .................................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*United States v. Al-Sadawi*, 432 F.3d 419 (2d Cir. 2005)............................................. 19

*United States v. Bein,* 728 F.2d 107, (2d Cir. 1984) .................................................... 18

*United States v. Chambers*, 800 F. App'x 43, (2d Cir. 2020)........................................ 9

*United States v. Dupree,* 870 F.3d 62, (2d Cir. 2017) ...................................... 7, 18, 20

*United States v. Figueroa,* 618 F.2d 934 (2d Cir. 1980) ............................................... 6

*United States v. Ivanova*, 19 F. Supp. 3d 511 (S.D.N.Y. 2014) ................................... 17

*United States v. Kahale*, No. 09 Cr. 159 (KAM), 2010 WL 456860, (E.D.N.Y. Feb. 3, 2010)... 17

*United States v. Malpiedi,* 62 F.3d 465, (2d Cir. 1995)............................................... 17

*United States v. Mercado*, 573 F.3d 138, (2d Cir. 2009)............................................... 7

*United States v. Mickens*, 926 F.2d 1323, (2d Cir. 1991)............................................ 17

*United States v. Middendorf*, No. 18 Cr. 35 (JPO), 2019 WL 4254025, (S.D.N.Y. Sept. 9, 2019) ................................................................................................................. 17

*United States v. Perez,* 387 F.3d 201, (2d Cir. 2004) ............................................ 17, 18

*United States v. Robinson,* 101 F.3d 688 ................................................................ 6, 17

*United States v. Triumph Capital Group,* 544 F.3d 149, (2d Cir. 2008) ...................... 17

United States v. Williams, 205 F.3d 23, (2d Cir. 2000) ......................................... 7, 20

*Untied States v. Scarpa*, 897 F.2d 63, (2d Cir. 1990) ................................................... 9

**Statutes and Rules**

Rule 403, Fed. R. Evid................................................................................... 8, 9, 11

Rule 404, Fed. R. Evid................................................................................... passim

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum in further support of the Government's seven original motions *in limine*.  The Government also respectfully submits this memorandum in support of a supplemental motion *in limine*, which seeks to admit at trial evidence of three instances of the defendant's witness tampering and suborning of false testimony.

### A.  The Government's Initial Motions *In Limine*

As set forth in the Government's initial memorandum ("Initial Memorandum;" Dkt No. 180), the Government moves as follows:

(1)     Evidence that the defendant used straw owners for multiple clients in addition to client E.M. Systems—as expressly charged in the Indictment—is relevant to establish the nature, development, and modus operandi of the conspiracy charged in the Indictment and the state of mind of the defendant, and is admissible both as direct evidence of the charged conspiracy and, in the alternative, as other act evidence under Federal Rule of Evidence 404(b).

(2)     Evidence of the defendant's attempts to intimidate and threaten a testifying co-conspirator, in an attempt to prevent exposure of the scheme, is admissible  to show consciousness of guilt and as direct evidence of the charged crimes.

(3)     The defendant should be precluded from offering evidence that he acted lawfully in certain instances.

(4)     The defendant should be precluded from interposing payments or acceptance of claims by First Pay Solutions LLC ("First Pay"), First Data Merchant Services LLC ("First Data"), and Wells Fargo Bank, N.A. ("Wells Fargo") (collectively, the "Processing Entities") as a defense to fraudulent claims; and should be precluded from introducing the settlement agreements entered into between the Federal Trade Commission ("FTC") and the Processing Entities  The defense has

not opposed the second part of this motion, pertaining to the settlements with the FTC.  (*See* Deft. Mem. at 18-20).

(5)     The defendant should be precluded from introducing evidence or  testimony to the effect that the victim-consumers have been made whole through subsequent litigation initiated by the Federal Trade Commission ("FTC")**.**   The defendant has not opposed this motion.

(6)     The defendant should be precluded from offering evidence concerning the commonness of similar misconduct by other actors in the credit card industry.

(7)     The defendant should be precluded from admitting into evidence any documents not produced prior to trial.  The defendant does not oppose this motion. (*See* Deft. Mem. at 22).

**B.  The Government's Supplemental Motion *In Limine***

(8)     In addition, as a supplemental motion *in limine,* the Government seeks to admit evidence of three instances in which the defendant engaged in witness tampering and suborning false testimony, all in an attempt to avoid the legal consequences of his crimes and other wrongdoing at CardReady.  The first of these three instances—a witness tampering incident earlier this year involving Potential Witness-1—was described to the Court and the defense in the letter the Government filed under seal on October 27, 2023.

## ARGUMENT

**I.      The Government's Initial Motions *In Limine* Should Be Granted**

In its Initial Memorandum, the Government described the charges against the defendant Brandon Becker, and the conduct that gave rise to those charges.  The Government also set forth the reasons that its initial seven motions *in limine* should be granted.  The defendant does not oppose several of those motions.  In the defendant's memorandum in opposition ("Defendant's

Memorandum;" Dkt No. 181),[1]—as discussed below—the defendant has opposed five of the Government's seven initial motions *in limine* (excepting motions numbers 5 and 7) and has opposed one such motion (number 4) only in part.

### A. Evidence that the Defendant Used "Signers" and Sham Companies for CardReady Customers Other Than E.M. Systems Is Admissible As Direct Evidence And Under Rule 404(b)

As noted in the Government's Initial Memorandum (at 6-7), the Government anticipates that a number of witnesses will testify—as corroborated by documentary evidence—that, at Becker's direction, CardReady extensively used sham merchant accounts to process payment-card transactions for other high-risk customers in addition to E.M. Systems (or "EMS"), both before, during and after the conspiracy involving EMS (the "EMS Scheme").  As the Government has previously argued, this evidence is admissible both as direct evidence of the crimes charged in the Indictment and pursuant to Rule 404(b), to show knowledge, intent, and lack of accident or mistake.

In opposing the admission of such evidence, the Defendant's Memorandum focuses almost exclusively on Rule 404(b), and largely ignores the fact that the Government plans to introduce this evidence as a part of the charged scheme.

### 1. The Proffered Evidence Is Admissible as Direct Evidence of the Charged Conspiracy

As noted in its Initial Memorandum (at 6-7), the Government expects to prove at trial that CardReady's use of hundreds of sham merchant accounts, which CardReady helped to establish in the names of straw "signers," was an important part of the way that Becker operated CardReady.

---

[1]  As used herein, "Govt. Init. Mem." refers to the Government's Initial Memorandum, Dkt No. 180; "Deft. Mem." refers to the Defendant's Memorandum; Dkt No. 181; and "Ind." refers to the third superseding Indictment; Dkt No. 81.

The fact that Becker directed CardReady to make extensive use of such straw signers before and throughout the EMS Scheme is important to showing the jury how Becker structured a significant part of CardReady's business operations, how he used his prior experience and that of his coconspirators, to design and execute the EMS Scheme, and how the pre-existing arrangements and personnel that CardReady had in place made the EMS Scheme an attractive opportunity for profit through fraud.

In the Defendant's Memorandum (at 2-7), the defense ignores that this use of additional signers is specifically alleged in the Indictment as a part of the charged fraud.  As stated in the Indictment, "CardReady made it possible for certain merchants engaged in deceptive sales practices to conceal their identities, gain and maintain access to the payment card processing system, spread out charges across multiple sham merchant accounts, and obtain money from payment processors and federally insured banks." (Ind. ¶ 2). The Indictment then charges that "In particular, the scheme enabled payment processing for charges generated through a Florida-based telemarketing scheme" carried out through E.M. Systems." (Ind. ¶ 3.) Thus, although the Indictment focuses on the EMS Scheme, the Indictment also expressly alleges that CardReady's fraudulent use of lies regarding signers and sham merchants was not limited to the EMS Scheme, but also included other merchants engaged in deceptive practices. The Initial Memorandum sets forth examples of how evidence of the wider plan should be admitted as direct evidence because it is inextricably intertwined with EMS Scheme.  (Govt. Init. Mem. at 9-10.)  For example, the defendant's prior experience with signer accounts, especially their eventual termination by processors, helps to explain why he instructed his employees to open over two dozen sham merchant accounts for EMS.  (*Id.*)

In opposition, the defense argues that "the issue to be resolved at trial is straightforward, whether . . . Mr. Becker participated in a conspiracy to help EMS obtain credit card payment processing by creating sham companies and submitting falsified merchant account applications." (Deft. Mem. at 7).  But this unsupported assertion elides what is almost certainly the central disputed issue in this trial—Becker's knowledge and fraudulent intent.  Indeed, the Defense Memorandum repeatedly returns to the centrality of the issue of Becker's knowledge and intent. (*See, e.g.*, Deft. Mem. at 13 ("the critical element in a fraud case is the mental state of the defendant"); *id.* at 14 (stressing the defense's intention to show "lack of specific intent"); *Id.* at 19 ("the issue of Mr. Becker's knowledge will be squarely before the jury")).  The evidence of CardReady's widespread use of sham merchants and false merchant account applications is direct proof of the charged offenses; it goes directly to Becker's knowledge and intent.

As the Government discussed in its Initial Memorandum (at 9), the proffered evidence arose out of the same transaction or series of transactions as the charged offense—namely, the recruitment of signers to act as straw merchants beginning in 2012.  That evidence will also show that Becker conspired with some of the same co-conspirators—some of whom will testify at trial— to use some of the same sham companies, in order to falsely obtain processing services for high-risk customers in addition to EMS.  The evidence will further show that Becker and his co-conspirators sometimes opened as many as five or more merchant accounts using the same signer, generally at processors other than First Pay or First Data.  Such evidence undermines the notion that the signers were true business owners, particularly where a single signer was used to open merchant accounts for widely different businesses, such as financial services for EMS and diet products for entirely different CardReady clients.  The recruitment and use of signers for merchants beyond EMS constitutes direct evidence of the charged conspiracy because it explains the

development of the relationship between Becker and his co-conspirators, to whom Becker paid commissions not only for finding signers for the EMS accounts, but also for many other high-risk businesses, making their participation in the conspiracy far more lucrative. The proffered evidence is inextricably linked to the story of the charged offenses, particularly in explaining the process of recruiting signers for EMS within a broader infrastructure at CardReady that provided the same fraudulent service for many other clients.

Therefore, such evidence should be permitted as direct proof of the charged offenses.

### 2.   In The Alternative, The Evidence Is Admissible Under Rule 404(b)

The Government also argued in its Initial Memorandum (at 10-14) that the proffered evidence is admissible pursuant to Rule 404(b), to show preparation, intent, absence of mistake, and lack of accident.  Despite an unsupported assertion in the Defendant's Memorandum (at 9) that these are not disputed issues to which this evidence pertains, the Defense Memorandum repeatedly makes clear that the defense intends to vigorously contest the defendant's guilty knowledge and fraudulent intent, as discussed above.  Accordingly, the Government is required to prove these elements.  *See, e.g., United States v. Robinson,* 101 F.3d 688, at *3 (2d Cir. June 28, 1996) (summary order) ("When the Government offers prior act evidence to prove an issue, counsel must express a decision not to dispute that issue with sufficient clarity that the trial court will be justified (a) in sustaining objection to any subsequent cross-examination or jury argument that seeks to raise the issue and (b) in charging the jury that if they find all the other elements established beyond a reasonable doubt, they can resolve the issue against the defendant because it is not disputed.") (quoting *United States v. Figueroa,* 618 F.2d 934, 942 (2d Cir. 1980)).

In such circumstances, the Second Circuit has upheld the introduction of other act evidence to prove knowledge and intent.  For example, in *United States v. Mercado,* a narcotics conspiracy

prosecution, the defendant claimed that he was just an innocent man driving around with his friends.  573 F.3d 138, 140 (2d Cir. 2009).  On appeal, the defendant challenged the admission of prior gun sales with the same co-conspirators. The Second Circuit affirmed because evidence of those sales "at least suggest[s] that Defendant was not an innocent pawn taken by surprise by the drug transaction." *Id.* at 141.  Here, Becker apparently intends to claim that he was a hands-off manager "outside day-to-day operations," who thought EMS's sham merchant accounts were no different than other legitimate merchant accounts used by other high-risk merchants.  (*See, e.g.,* Deft. Mem. at 16, 21.)   Given this line of defense, evidence that Becker used signers and sham merchant accounts before, during, and after the EMS Scheme supports the Government's contention that he was not duped by his employees and agents, but rather was a knowing and intentional participant.  Accordingly, the other acts evidence should be admissible.

The defense also argues that this evidence should be excluded under Rule 403 because it is "highly prejudicial."  (Deft. Mem. at 9.)  This rote argument should be rejected here, where the evidence is simply of additional instances of Becker engaging in *the very same sort of conduct* that is charged in the Indictment.  *See, e.g., United States v. Dupree,* 870 F.3d 62, 77 (2d Cir. 2017) ("There was no undue prejudice because the [Rule 404(b)] acts did not involve conduct more serious than the crimes charged, and any prejudicial effect was mitigated by the contemporaneous limiting instruction.") (citing *United States v. Williams*, 205 F.3d 23, 24 (2d Cir. 2000) (concluding there was no undue prejudice under Rule 403 test because "the evidence did not involve conduct more serious than the charged crime and the district court gave a proper limiting instruction")).  In

short, the proffered evidence should not be barred because its probative value is not substantially

outweighed by the risk of unfair prejudice, as required under Rule 403.[2]

**B. The Defendant's and a Co-conspirator's Threats to a Testifying Co-Conspirator to Prevent Exposure of the Scheme Should Be Admitted**

The second of the Government's initial motions *in limine* is to admit evidence of threats

that Becker and a co-conspirator made against a second co-conspirator ("Cooperating Witness-1

or "CW-1")), whom the Government expects to call at trial, in order to conceal from the FTC the

conduct that is also the basis of the instant prosecution. (*See* Govt. Init. Mem. at 15-17.) Those

acts of intimidation should now be considered along with three additional instances of Becker's

witness tampering and obstruction—which are the subject of the Government's supplemental

motion *in limine.* (*See* Section II, *infra*.)

Accordingly, this motion *in limine* is discussed at the end of this memorandum, in

conjunction with the Government's supplemental motions *in limine.* (*See* Section II, *infra.*)

**C. The Defendant Should Be Precluded from Offering Evidence that the Defendant Submitted Legitimate Merchant Applications**

The Government's third initial motion *in limine* seeks to preclude Becker from arguing,

eliciting on cross-examination, or offering evidence at trial that—with respect to some clients *other*

*than* EMS—CardReady submitted legitimate merchant applications that contained truthful

information about the underlying businesses. (Govt. Init. Mem. at 17-19.) The defendant appears

to seek to offer this evidence in support of the notion that he generally operated his business in a

non-criminal manner. Such irrelevant "good acts" evidence that the defendant did not commit

---

[2] Moreover, if the defense seeks a limiting instruction, the jury can be instructed to consider evidence of the more widespread use of such deceptive methods solely for the purpose of evaluating the defendant's knowledge of and intent to commit the charged crimes as they related to the EMS Scheme.

fraud in *all* instances is not probative of the narrower issues at trial, with regard to the alleged fraudulent nature of the billing claims submitted by the 26 sham merchant accounts.  Even if this evidence had any probative value—and it does not—it should nonetheless be excluded under Federal Rule of Evidence 403, because of its likelihood of "confusing the issues" and "misleading the jury."

In opposition, the defense does not challenge the basic thrust of this motion. Rather, the defense argues that this motion is "overbroad" and infringes on the defendant's ability to present a defense based upon Becker's mental state—and in particular based upon a purported lack of fraudulent intent. (Deft. Mem. at 13-14).

In so arguing, the defense concedes that "[i]t is well-settled law that '[a] defendant may not seek to establish his innocence…through proof of the absence of criminal acts on specific actions." (Deft. Mem. at 15 (quoting *United States v. Chambers*, 800 F. App'x 43, 46 (2d Cir. 2020) (summary order) (quoting *Untied States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990)).  And while further conceding that "evidence of past 'good acts' by a defendant is generally not probative," the defense argues that such evidence may be admissible "if a defendant is alleged to have 'always' or 'continuously' committed 'bad acts.'"  (*Id.*).

The Indictment does not allege, and the Government has no intention of arguing to the jury, that the defendant engaged in "ceaseless" criminal conduct, or that "all" of the defendant's submissions to First Pay, First Data, and Wells Fargo were fraudulent.  *See United States v. Damti*, 109 F. App'x 454, 455 (2d Cir. 2004).  Indeed, a significant part of CardReady's business involved "low-risk" merchants, for whom CardReady had no reason to engage in the sort of conduct charged in the Indictment.  As explained in the Government's Initial Memorandum (at 19), evidence that CardReady submitted truthful merchant applications in some instances for other clients is

9

irrelevant to whether Becker orchestrated a scheme to fraudulently obtain processing for EMS, as charged in the Indictment. Accordingly, the defendant has no basis to seek to admit "good-act" evidence, which is irrelevant to the charges at issue.

**D. The Defendant Should Be Precluded from Interposing His Victims' Payments Or Acceptance Of Claims As A Defense To Fraudulent Claims**

The Government's fourth motion *in limine* seeks to preclude the defendant from interposing as a defense the fact that First Pay, First Data, and/or Wells Fargo (collectively, the "Processing Entities") accepted each of the 26 fraudulent merchant applications and processed consumers' payments through them.  Specifically, the Government seeks to preclude the defendant from victim-blaming by arguing that he lacked knowledge and fraudulent intent because the Processing Entities accepted and processed these merchants and failed to detect that they were actually alter-egos of the same underlying business, EMS.  Relatedly, and without defense objection, Becker should also be precluded from offering evidence of settlement agreements between the FTC and First Data, and the FTC and the owner of First Pay, as discussed below.[3]

The defense opposes this motion *in limine* only to the extent it bars him from admitting the Processing Entities' acceptance of the EMS-related fraudulent merchant applications to prove Becker's lack of knowledge of fraud.  (Deft. Mem. at 19-20.)  More specifically, the defendant argues that a jury should be allowed to hear that Becker's "de facto role at CardReady at the time of the alleged conspiracy involved minimal supervision from a bird's-eye view."  (*Id.* at 19.)  As a result, the argument goes, when the Processing Entities "did not sound the alarm," a jury could find that Becker lacked the requisite guilty knowledge.  (*Id.* at 19-20.)

---

[3]  In the Defendant's Memorandum (at 18), the defense opposes this motion only "in part," and sets forth no opposition to excluding evidence of the FTC settlement agreements with the Processing Entities.

This argument is merely a variation of the impermissible blame-the-victim defense.  In essence, the defendant seeks to claim that he would have known about the fraud if the Processing Entities had "sound[ed] the alarm," and their failure to do so contributed to his supposed lack of knowledge.  But this contention distorts the issues to be presented at trial. The Government expects the evidence to show that Becker and his co-conspirators affirmatively deceived the Processing Entities for two years through a carefully orchestrated series of false statements, sham companies, sham merchant accounts, and false documents.  The potential for confusing the issues and misleading the jury, in violation of Rule 403, would be extremely high if the defendant were allowed to argue that he lacked guilty knowledge due, in part, to the Processing Entities' failure to "sound the alarm," when, in fact, Becker and his co-conspirators concealed material facts that would have enabled the Processing Entities to detect fraud.

In sum, the defendant should be precluded from interposing the Processing Entities' acceptance of merchant applications, the processing of payments through them for a period of time (before ultimately shutting down the sham merchant accounts), or the FTC's Civil Complaint and Stipulated Orders, as a defense to the alleged fraud.

### E.  The Defendant Does Not Object to Precluding Evidence that Many of the Defrauded Consumers Have Been Made Whole by Third Parties

In its Initial Memorandum (at 24), the Government moved to preclude evidence that many of the victims of the EMS Scheme have received restitution as a result of a settlement between the FTC and First Data.  The Defense has not opposed that motion, (*see* Deft. Mem.), and it should be granted.

**F.  The Defendant Should Be Precluded from Offering Evidence Concerning the Commonness of Similar Misconduct by Other Actors in the Payment Processing Industry**

The Government next moves to preclude the defendant from interposing an "others-were-also-doing-it" defense.  (*See* Govt. Init. Mem. at 25-26.)  Specifically, the types of fraudulent methods used by the defendant in this scheme—using false documents to establish multiple, successive accounts nominally owned by "signers" to disguise the true nature and identity of the underlying business—were used by others within the credit card processing industry.  Such misconduct was known by the victim bank here, Wells Fargo, which issued guidelines that specifically discussed how to detect and prevent this type of fraud.  (*Id.* at 25.)  But of course, it is no defense to criminal conduct to argue that others also engaged in similar crimes, and the defendant should be precluded from doing so.

The defense does not oppose this motion altogether. (Deft. Mem. at 20 ("Certainly, misconduct by others in the industry is irrelevant and not probative as to Mr. Becker's culpability for the crimes charged.")  Instead, the defense asserts that it will seek to elicit evidence of practices within the high-risk merchant segment of the processing industry that, they claim, were so prevalent in the payment processing industry that they left Becker with the understanding that such practices were lawful. To make this argument, Becker asserts that, "The fraud alleged in the Indictment, to someone outside day-to-day operations, could look deceivingly similar to legitimate business."  (Deft. Mem. at 21).

This argument is difficult to assess until it is clearer precisely what sort of evidence the defense proposes to introduce. First, the prosecution's evidence at trial will show that Becker was not remotely "outside day-to-day operations" at CardReady, but was actively involved in designing and executing the fraud scheme.  But more importantly, it is not clear that all of the practices that

12

the defense asserts were common in the industry were, in fact, legal and proper.  Accordingly, the

Government reserves the right to object to such evidence at trial.[4]

### G.  The Defendant Does Not Object to Precluding Any Documents Not Timely Produced Prior to Trial

Finally, the last of the Government's initial motions *in limine* sought an order from the

Court directing the defendant to promptly produce discovery pursuant to Rule 16 and Rule 17, and

that any discovery currently in the possession of the defense but not so produced should be

precluded from trial. The Defense expressly does not object to this motion, (Deft. Mem. at 22),

and it should be granted.

## II.  As a Supplemental Motion *In Limine,* the Government Seeks Admission of Evidence of Three Instances of the Defendant Engaging in Witness Tampering and Suborning False Testimony

As detailed in the Initial Memorandum, Becker had threatened CW-1 in connection with

the FTC's investigation.  (Govt. Init. Mem. at 14.)   CW-1 is expected to testify that, during the

FTC investigation into the same scheme at issue in this trial, Becker sought to foist a common

lawyer upon CW-1 and other CardReady Civil Defendants in the FTC case.  However, after CW-

1 decided not to use that lawyer and instead retained his own attorney, Becker threatened to send

someone to kill CW-1—a threat that CW-1 perceived to be reinforced when a friend of Becker

who was also a co-conspirator, warned CW-1 to watch his (CW-1's) back.  (*See* Govt. Init. Mem.

at 14.)

---

[4] For example, while the Government does not dispute the defense assertion that "a sales agent like CardReady" can "take a larger revenue share" under certain circumstances, that hardly diminishes the fact that the extraordinary 32% of revenue received  by CardReady, Becker, and his co-conspirators was a clear signal of something fundamentally awry at EMS.  No legitimate merchant would give up anything close to 32% of its revenue merely for the right to accept credit cards, even in a part of the payment processing industry where fees were somewhat elevated.

In recent weeks, the Government has obtained additional information about three instances in which the defendant engaged in witness tampering, suborning false testimony, and obstruction. For the reasons that follow, the Government moves that evidence of these three episodes—like Becker's threats to have CW-1 killed—should be admitted at trial.

**A.  Relevant Facts**





**2. Becker Induced a Co-Conspirator, Who Is Expected to Testify at Trial, to Falsely Minimize Becker's Role in the EMS Scheme When That Co-Conspirator Was Interviewed by the FTC**

The second additional episode of witness tampering that the Government seeks to prove at

trial took place during the FTC investigation of the scheme charged in the Indictment.  In the

course of that investigation, a co-conspirator who is expected to testify at the upcoming criminal

trial ("Cooperating Witness-2" or "CW-2") was interviewed telephonically by the FTC, which was

---

[5] The Government reiterates, as it made clear in its letters of October 27 and 30, 2023 and at the court videoconference on October 30, 2023, that it does not allege any improper conduct by defense counsel.  There is nothing improper about a defense attorney interviewing a potential witness prior to trial, nor in asking that witness leading questions. Moreover, as the Government made clear both here and in its earlier letters, Becker stated to Potential Witness-1 that his counsel had instructed him that he was not to contact Potential Witness-1, consistent with Becker's conditions of release.

reportedly joined by a representative of the Office of the Florida Attorney General. At Becker's urging, CW-2 was represented in that interview by an attorney whom Becker had long used to represent Becker, other family members, and CardReady ("Attorney-1"), and whom—Becker later told CW-2—had also represented two other co-conspirators. In preparation for that FTC interview, Becker urged CW-2 to falsely understate Becker's role at CardReady in connection with the EMS fraud scheme. More specifically, Becker told CW-2 to conceal from the FTC Becker's decision-making role in designing and carrying out the EMS Scheme, and to conceal the fact that CardReady and CW-2 were to receive an extraordinary 32% share of EMS's processing revenue. Subsequently, following Becker's instructions, CW-2 falsely minimized Becker's role during the FTC interview and misrepresented the profits paid to CardReady and to CW-2.[6]

### 3. Becker Induced Another Co-Conspirator, Who Is Also Expected to Testify at Trial, to Falsely Minimize Becker's Role at CardReady When Providing Sworn Deposition Testimony in a Civil Case

The third additional episode of witness tampering that the Government seeks to prove at trial involves Becker suborning perjury by another co-conspirator ("Cooperating Witness-3" or "CW-3") in a Judgment-Debtor Examination, taken under oath in February 2013. In that case, Becker and a number of companies that he controlled had been sued civilly in California Superior Court. After the plaintiffs obtained a money judgment, the plaintiffs took the testimony of Becker and CW-3, in proceedings called Judgment-Debtor Examinations. Becker urged CW-3 to provide false testimony in that Examination, by falsely denying Becker's leading decision-making role at CardReady and obfuscating information about Becker's assets and income. Such testimony was apparently intended to frustrate the plaintiffs' ability to collect their judgment from Becker.

---

[6] The FTC interview was conducted by telephone. When the FTC asked CW-2 whether Becker had played a significant role in setting up the EMS fraud scheme, Attorney-1, unseen by the FTC, shook his head no, signaling to CW-2 that the witness should falsely deny Becker's role.

### B. Applicable Law

It is well settled that attempted witness tampering is probative of a defendant's consciousness of guilt, and knowledge and intent, and is therefore admissible. The Second Circuit has affirmed admission of "evidence of attempted witness . . . tampering as probative of a defendant's consciousness of guilt." *United States v. Perez*, 387 F.3d 201, 209 (2d Cir. 2004); *United States v. Mickens*, 926 F.2d 1323, 1329 (2d Cir. 1991) ("The testimony was relevant since an effort to intimidate a key prosecution witness was probative of [the defendant's] state of mind."); *United States v. Ivanova*, 19 F. Supp. 3d 511, 516 (S.D.N.Y. 2014) (holding admissible "evidence that [the defendant] tampered with witnesses as relevant toward her consciousness of guilt"); *see also* 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 401.08.   The Second Circuit has consistently held that evidence of obstructive conduct is admissible to show a defendant's consciousness of guilt. *See United States v. Triumph Capital Group,* 544 F.3d 149, 160 (2d Cir. 2008) ("[Defendant]'s efforts to obstruct the investigation evidence a consciousness of guilt . . ."); *see also United States v. Malpiedi,* 62 F.3d 465, 467 (2d Cir. 1995) ("This testimony was direct evidence of [defendant's] obstruction of justice and of his consciousness of guilt of the other charges."); *United States v. Robinson*, 635 F.2d 981, 986 (2d Cir. 1980) (finding evidence of a conspiracy's obstruction of the government's investigation admissible to show consciousness of guilt).

Efforts to conceal a crime are similarly admissible as direct evidence of a defendant's state of mind. *See United States v. Middendorf*, No. 18 Cr. 35 (JPO), 2019 WL 4254025, at *3 (S.D.N.Y. Sept. 9, 2019) ("[D]irect evidence of [defendant]'s efforts to conceal his conduct support [] a finding" of criminal intent); *United States v. Kahale*, No. 09 Cr. 159 (KAM), 2010 WL 456860, at *4 (E.D.N.Y. Feb. 3, 2010) ("[A]n act taken to conceal an ongoing illegal agreement" is

"admissible as direct evidence of the crimes charged" because it "constitutes an act in furtherance of the charged conspiracy and as such, it is highly probative evidence.").

With an appropriate limiting instruction to the jury, the probative value of the evidence of Becker's obstructive conduct outweighs any potential risk of prejudice or jury confusion. *See Dupree*, 870 F.3d at 77; *Perez*, 387 F.3d at 209.

### C. The Evidence of Each of the Four Instances of Witness Intimidation and/or Witness Tampering Should Be Admitted

The Government seeks to introduce evidence of four distinct instance of witness intimidation and/or witness tampering by Becker. Each of these should be admitted to prove consciousness of guilt, and knowledge and intent.





19



### 2. The Defendant's Witness Tampering With Respect to Potential Witness-1 Is Admissible

Becker's witness tampering with respect to Potential Witness-1 is properly admissible to prove consciousness of guilt.  While pending trial and forbidden to contact witnesses, Becker repeatedly contacted Potential Witness-1, in direct violation of his bail conditions.  Becker lied to Potential Witness-1 about suing two co-conspirators, and repeatedly contacted and attempted to contact Potential Witness-1 using a burner phone in an apparent effort to ingratiate himself so as to influence Potential Witness-1's testimony at his upcoming trial.

This series of improper communications with a known potential witness is probative of the defendant's consciousness of guilt.  Evidence of tampering with Potential Witness-1 also passes the Rule 403 balancing test because—in a case about an ongoing series of false statements over a two-year period—there is nothing particularly inflammatory about lying to a potential witness. Any risk that a jury would view Potential Witness-1's testimony as propensity evidence can be cured with a proper limiting instruction.

### 3. The Defendant's Successful Efforts to Persuade a Co-Conspirator to Falsely Minimize Becker's Role in the EMS Scheme When Testifying to the FTC Should Be Admitted

Becker's next instance of witness tampering—the one that occurred in connection with the FTC's investigation of the same scheme charged in this criminal case—is likewise probative of the defendant's consciousness of guilt. In this incident, Becker instructed CW-2 to provide false information to the FTC concealing CardReady's extraordinary fee arrangement with EMS and denying Becker's central role in planning and executing the EMS scheme. Such blatant witness tampering in connection with a factually related proceeding is admissible as direct evidence of the defendant's consciousness of guilt, knowledge, and intent.

In the alternative, this evidence is admissible under Rule 404(b), to show consciousness of guilt, and knowledge and intent. It is highly probative that Becker chose to direct a witness to make false statements to regulatory authorities, as part of an effort to conceal his own violations of the law. As is true of Potential Witness-1's testimony, there is nothing particularly inflammatory about CW-2's testimony, and any potential risk of unfair prejudice can be cured with a limiting instruction.

### 4. Becker's Subornation of Perjury, Leading CW-3 to Falsely Minimize Becker's Role at CardReady In a Sworn Deposition by a Judgment Debtor, Is Also Admissible

Finally, the Government seeks to admit Becker's subornation of perjury in a civil deposition to show opportunity through his dominant role among his co-conspirators, and to show lack of accident and absence of mistake. One salient fact about this evidence is that CW-3 would ordinarily be expected to testify about his deposition perjury as part of admitting on direct testimony his own prior wrongdoing. The additional fact here at issue, which the Government

seeks to introduce, is that CW-3 provided this perjurious testimony as part of an illegal agreement with Becker, who instructed him to give this testimony.

As set forth *supra,* this involved Becker's tampering with the sworn testimony of a co-conspirator ("CW-3") during a Judgment-Debtor Examination taken by plaintiffs who were seeking to collect a judgement from Becker and his companies.  In a scenario closely reminiscent of the false FTC testimony that Becker suborned from CW-2, Becker instructed CW-3 to provide false sworn testimony that was designed to defeat the plaintiffs' efforts to collect on their judgment. Becker instructed the witness to minimize Becker's role at CardReady, falsely testifying that Becker was not the head of CardReady, and obfuscating Becker's remuneration from CardReady.

In contrast to the three other instances of witness tampering outlined above, this subornation of perjury was not in direct furtherance of the scheme charged in the Indictment. Rather, it involved a separate civil litigation.  Accordingly, the Government seeks its admission solely pursuant to Rule 404(b), to establish his controlling, dominant role in relation to his co-conspirators, which provided him with the opportunity to commit the charged offenses.

As with testimony regarding the other instances of witness tampering, this episode is not unduly inflammatory, and any risk of unfair prejudice can be cured with an appropriate limiting instruction.

## CONCLUSION

For the foregoing reasons, the Government's motions *in limine* should be granted in their entirety.

Dated:  November 3, 2023
          New York, New York

                                        Respectfully submitted,

                                        DAMIAN WILLIAMS

By: _____/s/_____
               David Raymond Lewis
               Vladislav Vainberg
               Sarah Lai
               Assistant United States Attorneys
               (212) 637-2397 / 1029 / 1944