O8UDBecP

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4            v.                          19 Cr. 00704 (SDA)

5  BRANDON BECKER,

6                                        Plea
            Defendant.
7  ------------------------------x

8
                                        New York, N.Y.
9                                       August 30, 2024
                                        12:00 p.m.
10

11 Before:

12                  HON. STEWART D. AARON,

13                                      U.S. Magistrate Judge

14                     APPEARANCES

15 DAMIAN WILLIAMS
       United States Attorney for the
16     Southern District of New York
   VLADISLAV VAINBERG
17     Assistant United States Attorney

18 MICHAEL GIORDANO
   BOBBI C. STERNHEIM, appearing telephonically
19     Attorneys for Defendant

20

21

22

23

24

25

O8UDBecP

1                    (Case called.)

2                    THE DEPUTY CLERK:  Counsel, please state your

3       appearances.

4                    MR. VAINBERG:  Good afternoon, your Honor.  Vlad

5       Vainberg for the United States.

6                    MR. GIORDANO:  Michael Giordano from Fasulo Giordano &

7       DiMaggio for Mr. Becker, who is present to my right.  Good

8       afternoon, your Honor.

9                    THE DEFENDANT:  Good afternoon, your Honor.

10                   THE COURT:  Good afternoon.

11                   THE DEFENDANT:  Thank you for your time, everybody.

12                   THE COURT:  I'll just note for the record we have

13      Ms. Sternheim participating by telephone.

14                   MS. STERNHEIM:  That is correct, your Honor.  Thank

15      you.

16                   THE COURT:  All right.  So I understand we're here for

17      purposes of Mr. Becker entering a plea.

18                   Is that right?

19                   MR. VAINBERG:  Yes, your Honor.

20                   MR. GIORDANO:  Yes, your Honor.

21                   THE COURT:  Mr. Becker, I have before me a document

22      entitled Consent to Proceed Before a United States Magistrate

23      Judge on a Felony Plea Allocution.  That form says that you

24      know you have the right to have your plea taken by a United

25      States District Judge, but you're agreeing to have a plea taken

O8UDBecP

1   by a United States Magistrate Judge.

2           As a magistrate judge, I have the authority to take

3   the plea by your consent, and you'll still be entitled to all

4   the same rights and protections as if you were before a

5   district judge, among other things, if you're found guilty, to

6   be sentenced by the district judge.

7           Let me ask you, did you sign this consent to proceed

8   form voluntarily?

9           THE DEFENDANT:  Yes.

10          THE COURT:  Before you signed the form, did your

11  lawyer explain it to you?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Do you wish to proceed with your plea

14  before me, a United States Magistrate Judge?

15          THE DEFENDANT:  Yes, I do.  Yes, I do.

16          THE COURT:  All right.  I'm accepting the consent form

17  and I'm affixing my signature to the document to reflect that.

18          I'll now ask my deputy to please swear in Mr. Becker.

19          THE DEPUTY CLERK:  Please raise your right hand.

20          (Defendant sworn.)

21          THE DEPUTY CLERK:  Thank you.

22          THE COURT:  Mr. Becker, the purpose of this proceeding

23  is to make sure you understand your rights to decide whether

24  you're pleading guilty of your own free will, and to make sure

25  you're pleading guilty because you are guilty and not for some

O8UDBecP

1     other reason.

2                 Do you understand?

3                 THE DEFENDANT:  I do.

4                 THE COURT:  All right.  Now I'm going to ask you

5     certain questions.  It's very important you answer these

6     questions honestly and completely.  If you don't understand any

7     of the questions or if you want time to consult with your

8     lawyer, please say so, because it is important you understand

9     every question before you answer.  Okay?

10                THE DEFENDANT:  Yes, your Honor.

11                THE COURT:  All right.  What is your full name?

12                THE DEFENDANT:  Brandon Arllen Becker.

13                THE COURT:  How old are you?

14                THE DEFENDANT:  53.

15                THE COURT:  Can you read and write in English?

16                THE DEFENDANT:  Yes.

17                THE COURT:  What was the highest grade in school that

18    you completed?

19                THE DEFENDANT:  High school.  All the way through.

20    High school.

21                THE COURT:  Are you currently or have you recently

22    been under the care of a doctor or mental health professional

23    for any reason?

24                THE DEFENDANT:  No.

25                THE COURT:  Are you under the influence of any drug or

O8UDBecP

1    alcohol today?

2          THE DEFENDANT:  Not today.

3          THE COURT:  When was the last time you ingested any

4    drug or alcohol?

5          THE DEFENDANT:  No drugs at all.  Just, you know, in

6    flight, you know, on the airplane, on the way here, rapidly.

7          THE COURT:  You're talking about you drank alcohol on

8    the plane?

9          THE DEFENDANT:  Yeah, on the way here, on the plane,

10   which was last night.

11         THE COURT:  Got it.

12         THE DEFENDANT:  Not a lot.  Just one or two drinks.

13         THE COURT:  Understood.

14         How are you feeling physically today?

15         THE DEFENDANT:  I'm feeling extremely stressed out.

16   This is a hard process, because, you know -- I'm told it's the

17   best choice I could have.  So I'm very, very upset, but it's an

18   awful situation.  I want to apologize to the Court about my

19   indecision, but I don't think I have any better option, so --

20         THE COURT:  Well --

21         THE DEFENDANT:  I'm just answering your question,

22   being straight forward.  I'm here to just plead, and, you know,

23   I'm fine.  I can make a decision.  I do question the magistrate

24   judge being not the judge -- the judge on the case.  I could

25   step away and ask him what the difference is.  I don't

O8UDBecP

1   understand that, but --

2           THE COURT:  Absolutely.

3           MR. GIORDANO:  Your Honor, may I have a moment?

4           THE COURT:  Yes.

5           MR. GIORDANO:  Thank you.

6           THE DEFENDANT:  Excuse me.

7           (Pause in proceedings.)

8           THE DEFENDANT:  My apologies, your Honor, for wasting

9   any more time.

10          THE COURT:  All right.  So you do understand now from

11  your lawyer what the difference is between a magistrate judge

12  and a district judge and the ramifications of signing the

13  consent form that you signed?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  All right.  Have you had sufficient time

16  to discuss the charges against you in your plea with your

17  attorneys?

18          THE DEFENDANT:  I've had that, yes.  Correct.

19          THE COURT:  Have you been satisfied with the advice

20  and counsel that has been provided to you by your attorneys?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Are you ready to enter a plea today?

23          THE DEFENDANT:  I am.

24          THE COURT:  All right.  Does either counsel have

25  objections to defendant's competence to plead at this time?

O8UDBecP

1          MR. VAINBERG:  No, your Honor.

2          MR. GIORDANO:  No, your Honor.

3          THE COURT:  All right.  Mr. Becker, in order to

4   determine whether your plea is voluntary and made with a full

5   understanding of the charges against you and the consequences

6   of your plea, I'm going to make certain statements to you and

7   I'm going to ask you certain questions.  I want you to

8   understand that I need not accept your plea unless I am

9   satisfied that you are, in fact, guilty and that you fully

10  understand your rights.

11          The plea agreement states that you're going to plead

12  guilty to Count One of the superseding indictment.  Count One

13  charges you with conspiracy to commit wire fraud and bank fraud

14  from at least in or about 2012 through at least in or about

15  2015 in the Southern District of New York and elsewhere in

16  violation of Title 18, United States Code, section 1349.

17          Count One carries a maximum sentence of imprisonment

18  of 30 years; a maximum term of supervised release of five

19  years; a maximum fine pursuant to Title 18, United States Code,

20  sections 3571 and 1344 of a million dollars, twice the gross

21  pecuniary gain derived from the offense, or twice the gross

22  pecuniary loss to persons other than yourself as a result of

23  the offense; and a $100 mandatory special assessment.  In

24  addition, the Court must order restitution.

25          Do you understand that that is the -- what I just

O8UDBecP

stated is the crime to which you're pleading and the maximum

minimum penalties applicable to that crime?

THE DEFENDANT:  I do have a question if you don't

mind.

THE COURT:  You're asking to consult with your lawyer,

and the answer is of course you can.

MR. GIORDANO:  Thank you, your Honor.

THE DEFENDANT:  Yes, your Honor, if you don't mind.

(Pause in proceedings.)

THE DEFENDANT:  I'm ready to proceed.  Sorry.

THE COURT:  All right.  So just to go back, I had

explained to you what Count One charged you with, as well as

the maximum, minimum penalties applicable to that crime.

Did you understand what I stated?

THE DEFENDANT:  Yes.

THE COURT:  Now, I mentioned the term "supervised

release."  What that means is you'll be supervised for a period

of years after release from prison.  There will be conditions

with which you must obey.  If you don't, you could be sent to

prison without a jury trial.

Do you understand that?

THE DEFENDANT:  Yes, I do, your Honor.

THE COURT:  Do you also understand that, as part of

your plea agreement, to admit to the forfeiture allegation with

respect to Count One of the indictment?

O8UDBecP

1        THE DEFENDANT:  Yes.

2        THE COURT:  You have agreed to forfeit to the United

3   States, pursuant to 18, U.S.C., section 982(a)(2)(A) a sum of

4   money equal to $11,405,964 in United States currency,

5   representing proceeds traceable to the commission of the

6   offense.

7        Do you understand that?

8        THE DEFENDANT:  Yes, your Honor.

9        THE COURT:  You consented to the entry of a consent

10  preliminary order of forfeiture/money judgment, and you signed

11  that document, correct?

12        THE DEFENDANT:  I did.  Correct.

13        THE COURT:  Do you also understand that any forfeiture

14  of your assets shall not be treated as satisfaction of any

15  fine, restitution, costs of imprisonment, or any other penalty

16  the Court may impose upon you in addition to forfeiture?

17        THE DEFENDANT:  I understand that.

18        THE COURT:  You've also agreed to make restitution in

19  the amount of $1,910,600.05 in accordance with 18, U.S.C.,

20  sections 3663, 3663(a), and 3664.  That amount is to be paid

21  according to a plan established by the Court.  You also have

22  agreed that the obligation to make restitution shall be made a

23  condition of probation or of supervised release, as the case

24  may be, and that you'll be given credit against the restitution

25  amount for any payments made prior to sentencing, as verified

O8UDBecP

1   by the United States Attorney's Office.

2           Do you understand that?

3           THE DEFENDANT:  I do.  I was explained that by

4   counsel.

5           THE COURT:  All right.  Mr. Becker, what country are

6   you a citizen of?

7           THE DEFENDANT:  The United States.

8           THE COURT:  You should know if you're not a citizen of

9   the United States, then your guilty plea and conviction make it

10  very likely that your deportation from the United States is

11  presumptively mandatory, and that at minimum you are at risk of

12  be deported and suffering other adverse immigration

13  consequences.

14          Do you understand that?

15          THE DEFENDANT:  I do, your Honor.

16          THE COURT:  Have you discussed the possible

17  immigration consequences of your guilty plea and conviction

18  with your lawyer?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Am I correct you wish to plead guilty

21  regardless of any immigration consequences that may result?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  Do you understand the charges against you

24  and the consequences of pleading guilty?

25          THE DEFENDANT:  I do.  I understand.

O8UDBecP

1          THE COURT:  All right.  Do you understand that in

2     exchange for your plea, the United States Attorney's Office has

3     agreed not to criminally prosecute you further for conspiring

4     to commit wire fraud and bank fraud between in and/or about

5     2012 and in and/or about 2015 in connection with your

6     participation in a scheme in which CardReady, LLC, and its

7     employees and agents falsified, submitted multiple shell

8     merchant account applications to one or more banks, processing

9     companies, independent sales organizations, and their agents,

10     including an independent sales organization with headquarters

11     in New York City, in order to fraudulently obtain credit or

12     debit card processing services as charged in Count One of the

13     superseding indictment?

14          THE DEFENDANT:  Yes, I understand.

15          THE COURT:  Do you understand that the United States

16     Attorney cannot make any promises to you about criminal tax

17     violations?

18          THE DEFENDANT:  I do understand that.

19          THE COURT:  Do you understand that in exchange for

20     your plea, the plea agreement does not bar the use of your

21     conduct as a predicate act or as the basis for a sentencing

22     enhancement in any subsequent prosecution?

23          THE DEFENDANT:  I understand that as well.

24          THE COURT:  Do you agree that with respect to any and

25     all dismissed charges you are not a prevailing party within the

O8UDBecP

1   meaning of the Hyde Amendment and you will not file any claim

2   under that law?

3           THE DEFENDANT:  I need to refer to counsel.  I don't

4   understand.

5           THE COURT:  Okay.  So we're going to take a brief

6   pause to have your attorney explain it to you.  It is something

7   that's mentioned in the plea agreement, but I want your

8   attorney to explain it to you so you fully understand.

9           THE DEFENDANT:  Thank you, your Honor.  I'll be very

10  quick.

11          (Pause in proceedings.)

12          THE DEFENDANT:  Excuse me.  Your Honor, we're ready to

13  proceed.

14          THE COURT:  All right.  So I'll just repeat the

15  question.

16          Do you agree that with respect to any and all

17  dismissed charges you are not a prevailing party within the

18  meaning of the Hyde Amendment, and you will not file any claim

19  under that law?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Do you understand you have the right to

22  plead not guilty and the right to a trial on the charges

23  against you and, in fact, a trial by jury?

24          THE DEFENDANT:  I understand.

25          THE COURT:  All right.  I'm now going to ask the

O8UDBecP

1    Assistant United States Attorney to state the elements of the

2    crime charged, the elements of the things the government would

3    have to prove beyond a reasonable doubt if this case were to

4    have gone to trial.

5            MR. VAINBERG:  With the Court's permission, I'm going

6    to recite the elements of Count One, which is the conspiracy

7    and the underlying wire fraud and bank fraud objects of that

8    conspiracy.

9            Count One of the indictment charges Mr. Becker with

10   conspiracy to commit wire fraud and bank fraud in violation of

11   section 1349 of Title 18 of the United States Code.  That

12   conspiracy has two elements:

13           First, that two or more persons in some way or manner

14   agreed to try to accomplish a common and unlawful plan to

15   commit a fraud crime, here wire fraud and bank fraud, as

16   charged in the indictment;

17           And, second, the defendant knew the unlawful purpose

18   of the plan, and willfully joined in it during the time period

19   charged in the indictment.

20           One of the objects of the conspiracy was wire fraud,

21   in violation of section 1343 of Title 18.  Wire fraud has three

22   elements:

23           First, there was a scheme or artifice to defraud or to

24   obtain money or property by materially false and fraudulent

25   pretenses, representations or promises;

O8UDBecP

1        Second, the defendant knowingly and willfully

2   participated in the scheme or artifice to defraud with

3   knowledge of its fraudulent nature and with specific intent to

4   defraud;

5        And, third, that in execution of that scheme, the

6   defendant used or caused the use of the mail or interstate

7   wires, in this case wires, between California, where CardReady

8   and Mr. Becker were located, and the company known as a New

9   York ISO in the indictment, which was located in Manhattan.

10       The second object of the conspiracy was bank fraud in

11  violation of section 1344.  That crime also has three elements:

12       First, there was a scheme to defraud a financial

13  institution or to obtain money or funds owned or under the

14  custody or control of a financial institution by means of

15  materially false or fraudulent pretenses, representations or

16  promises;

17       Second, the defendant executed or attempted to execute

18  the scheme with the intent to defraud a financial institution,

19  or with the intent to obtain money or funds owned or under the

20  custody or control of the financial institution;

21       And, third, at the time of the execution of the

22  scheme, the financial institution had its deposits insured by

23  the FDIC.  In this case, the bank which received the fraudulent

24  merchant applications was Wells Fargo, an FDIC insured bank.

25       THE COURT:  Mr. Becker, do you understand if you pled

O8UDBecP

1    not guilty and went to trial, the burden would be on the

2    government to prove each and every element of the crime charged

3    beyond a reasonable doubt in order to convict you?

4              THE DEFENDANT:  I understand.

5              THE COURT:  Do you understand you have the right to be

6    represented by counsel, and, if necessary, have the Court

7    appoint counsel at trial and at every other stage of the

8    proceeding?

9              THE DEFENDANT:  I understand.

10              THE COURT:  Do you understand that at trial you'd have

11    the right to confront and cross-examine witnesses against you

12    and the right not to be compelled to incriminate yourself?

13              THE DEFENDANT:  I do understand that.

14              THE COURT:  Do you understand that at trial you'd be

15    presumed innocent until such time, if ever, the government

16    established your guilt by competent evidence to the

17    satisfaction of the trier of fact beyond a reasonable doubt?

18              THE DEFENDANT:  I understand that.

19              THE COURT:  Do you understand that at trial you'd have

20    the right to testify and you would also be entitled to

21    compulsory process, in other words, the right to call witnesses

22    on your own behalf?

23              THE DEFENDANT:  Yes, your Honor.

24              THE COURT:  Do you understand that if your plea is

25    accepted, there will be no further trial of any kind, so by

O8UDBecP

1    pleading guilty, you're waiving your right to trial?

2              THE DEFENDANT:  I understand that.

3              THE COURT:  Do you understand that any statements you

4    make here today under oath may be used against you in a

5    prosecution for perjury or for making false statements?

6              THE DEFENDANT:  I understand that as well.

7              THE COURT:  Failing to tell the truth today in this

8    proceeding is a crime.

9              Do you understand?

10             THE DEFENDANT:  I do.

11             THE COURT:  All right.  So I have before me the plea

12   agreement.  It's dated August 22, 2024, and it was signed by

13   you today.

14             Am I correct that you signed this document?

15             THE DEFENDANT:  You are correct, your Honor.

16             THE COURT:  Did you read the agreement before you

17   signed it?

18             THE DEFENDANT:  I did, and it was explained by my

19   counsel.

20             THE COURT:  That was going to be my next question.

21             You did discuss it with your attorney before you

22   signed it?

23             THE DEFENDANT:  Yes, I did, your Honor.

24             THE COURT:  All right.  Now, putting the plea

25   agreement to one side, separate and apart from the plea

O8UDBecP

```
 1    agreement, have any threats or promises been made to you to
 2    make you plead guilty?
 3                THE DEFENDANT:  No, there's nothing like that.
 4                THE COURT:  Is anyone forcing you to plead guilty?
 5                THE DEFENDANT:  They're not.
 6                THE COURT:  Separate and apart from the plea
 7    agreement, have any understandings or promises been made to you
 8    about the sentence that you'll receive?
 9                THE DEFENDANT:  There has been none, no.
10                THE COURT:  Is your plea voluntarily, in other words,
11    being made of your own free will?
12                THE DEFENDANT:  Yes.
13                THE COURT:  All right.  I'm now going to review
14    certain portions of your plea agreement with you.
15                It states that you and the government have reached
16    agreement regarding the appropriate calculation of your
17    sentence under a part of our law known as the sentencing
18    guidelines, and that the stipulated sentencing range is from
19    108 to 135 months' imprisonment.
20                Do you understand that?
21                THE DEFENDANT:  Yes.  I was given that information,
22    your Honor.
23                THE COURT:  The agreement also states that you and the
24    government have agreed that the applicable fine range is
25    $30,000 to $300,000.
```

O8UDBecP

1              Do you understand that?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Do you understand that neither the

4    probation office nor the Court is bound by the guidelines

5    stipulations and the sentence to be imposed upon you will be

6    determined solely by the Court?

7              THE DEFENDANT:  I do understand that.

8              THE COURT:  Now, in imposing a sentence upon you, the

9    Court is obligated to calculate the applicable sentencing

10   guideline range in determining a sentence range, including

11   other sentencing factors that are set forth in Title 18, United

12   States Code, section 3553(a).

13             Do you understand that?

14             THE DEFENDANT:  Give me one moment, please, sir?

15             THE COURT:  Sure.

16             (Pause in proceedings.)

17             THE DEFENDANT:  Yes, I do understand.  It was

18   clarified.  Yes.

19             THE COURT:  All right.  Do you understand you've

20   agreed not to file a direct appeal or otherwise challenge your

21   conviction if you're sentenced in or below the sentencing --

22   the stipulated guidelines range?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  Do you understand you've agreed to waive

25   your right to appeal any term of supervised release that is

O8UDBecP

1    less than or equal to the statutory maximum?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Do you understand you've agreed to waive

4    your right to appeal any fine that is less than or equal to

5    $300,000?

6              THE DEFENDANT:  I understand.

7              THE COURT:  In light of the foregoing, how do you

8    plead?

9              THE DEFENDANT:  Guilty.

10             THE COURT:  Are you pleading guilty because you are,

11   in fact, guilty?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Do you understand that the plea agreement

14   does not bind any prosecuting office other than the United

15   States Attorney's Office for the Southern District of New York?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Do you understand that apart from any

18   proffer agreements you may have entered into with the

19   government, the plea agreement takes the place of any prior

20   understanding you may have had with the government and that the

21   plea agreement cannot be modified except in a writing signed by

22   all parties?

23             THE DEFENDANT:  I understand, yes.

24             THE COURT:  Do you understand that if your conviction

25   following your plea of guilty is vacated for any reason, then

O8UDBecP

1    the government is not time barred and if the cause of action is

2    not time barred as of the date you signed the agreement, the

3    government can reinstate its prosecution against you?

4            THE DEFENDANT:  Give me one moment, your Honor,

5    please?

6            THE COURT:  Sure.

7            (Pause in proceedings.)

8            THE DEFENDANT:  I understand.  Yes, your Honor.

9            THE COURT:  Mr. Becker, did you commit the offense to

10   which you're pleading?

11           THE DEFENDANT:  Yes, I did.

12           THE COURT:  Please tell me in your own words what you

13   did.

14           THE DEFENDANT:  I agreed and I participated with

15   others to submit merchant applications and misrepresentations

16   to banks in order to obtain credit card approvals for money

17   acceptance and money processing.  I'm looking at a piece of

18   paper.  I'd like to add a little more on the record.  It is,

19   again, that all this was to help merchants accept credit card

20   processing.  I knew the misrepresentations were false.  In

21   saying that, I didn't believe it was -- you know, it was a

22   wrong practice, but that's what it is.  This occurred between

23   2012 and 2015 in the Southern District of New York, and

24   possibly elsewhere, where I knew it was wrongdoing and, again,

25   possibly against the law, but I can say that, you know, it is

O8UDBecP

1    against the law.

2              THE COURT:  Well, let me ask you this.  Did you know

3    at the time you committed these acts that what you were doing

4    was wrong and against the law?

5              THE DEFENDANT:  No, I didn't believe it was wrong at

6    the time.  I do believe that I was under -- I was told that it

7    is against the law, and this is the -- this is -- you know, I

8    have to plead guilty because this is -- there's a fact-based

9    argument that is saying that you cannot, you know, submit

10   documents that are otherwise completely legitimate or know

11   about it or be the CEO of a company.  So I said I'll agree to

12   these terms.

13             So, yes, I'm pleading guilty to all of it, because

14   ultimately I was the CEO of the company, and I want to tell the

15   Court that, you know, I'm sorry and I didn't -- I didn't

16   believe it was really -- I would never do such a thing if I

17   knew the law, you know -- but, at the end of the day, I'm here,

18   I am pleading guilty to whatever is being, you know, offered,

19   and I understand everything.  So I get on the record that --

20   that -- so, you know, I knew what I was doing was wrong and it

21   was against the law, to make things easy.

22             MR. GIORDANO:  Your Honor, may I have a moment?

23             THE COURT:  Is this defense counsel who wants to

24   speak?

25             MR. GIORDANO:  Yes, your Honor.  May I have a moment?

O8UDBecP

1           THE COURT:  Yes.

2           MR. GIORDANO:  Do you mind if I step out for a second?

3           THE COURT:  Yes.

4           MR. GIORDANO:  Thank you.

5           (Recess taken.)

6           THE COURT:  All right.  We're back on the record.

7           MR. GIORDANO:  Your Honor, thank you for the

8    opportunity to discuss with my client.

9           After our conversation, I believe he would like the

10   opportunity to amend some of the previous statements he just

11   made, and I'll let him put it in his own words if it's all

12   right with the Court.

13          THE COURT:  Okay.  I'll just need you to speak into

14   the microphone, Mr. Becker.

15          THE DEFENDANT:  Yes, your Honor.

16          I apologize for wasting the Court's valuable time.  I

17   did not understand the form in which I could discuss my

18   thoughts and everything else.  I'm ready to proceed on the

19   plea, and then continue with the process exactly as stated with

20   my mind in perfect order, you know.  And I'm sorry, and I, you

21   know, have a lot of regret already.  That's it.  But this is

22   hard of course, but I'm ready to continue on with the process

23   of, you know, pleading guilty, so -- which I have to -- I am,

24   so, you know, anyway --

25          THE COURT:  Here's the question.  I can only recommend

O8UDBecP

1    to Judge Preska that the plea be accepted if you had the

2    requisite intent, mens rea, for the crime, and that you're

3    pleading to that.  When I asked you the question, did you know

4    at the time you performed the acts that what you were doing was

5    wrong and against the law, you hedged.  So I'll ask you that

6    question again.

7        Did you know at the time you committed the acts that

8    you spoke of that what you were doing was wrong and against the

9    law?

10       THE DEFENDANT:  Yes, your Honor, I did.  I made a

11   mistake.  I'm super sorry.  And I knew it was against the law.

12   I'm taking it.  I'm taking it.  I'm guilty.

13       THE COURT:  The government wishes to be heard?

14       MR. VAINBERG:  Your Honor, I would just recommend, as

15   a question to be posed to Mr. Becker, if -- two questions:

16   Whether he participated in a conspiracy to make

17   misrepresentations to a bank, and whether he knew that lying to

18   a bank was wrong.

19       THE COURT:  Did you participate in a conspiracy to --

20       MR. VAINBERG:  Make misrepresentations.

21       THE COURT:  -- make misrepresentations to a bank?

22       THE DEFENDANT:  The prosecution's correct.  I did.  He

23   completely -- yes.  The answer is yes.

24       THE COURT:  The second question was --

25       MR. VAINBERG:  Did he know that lying to a bank was

O8UDBecP

1    wrong.

2          THE COURT:  Did you know that lying to a bank was

3    wrong?

4          THE DEFENDANT:  Yes.  I appreciate the ability to

5    respond.  He's right.  Yes, I knew it was wrong.

6          THE COURT:  One of the questions I asked you earlier,

7    Mr. Becker, or one of the things I stated earlier, to be more

8    precise, was that I needed to make sure that you were pleading

9    guilty because you are guilty and not for some other reason.

10          Are you pleading guilty because you are guilty?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  You testified earlier or stated earlier

13    under oath that you were stressed and, if memory serves -- you

14    didn't use the word "pressure" -- one could discern from your

15    comments that you felt pressure.

16          Is that stress altering your ability to think

17    rationally with respect to accepting this plea?

18          THE DEFENDANT:  No.  It's straight forward.  It's the

19    right thing to do, and I'm pleading guilty.  Stress is an

20    element, but it's not -- it's natural, but it's not going to

21    change my decision on my guilty plea, your Honor.

22          THE COURT:  Does the government have any other

23    questions it wishes me to put to Mr. Becker?

24          MR. VAINBERG:  Just that -- I think Mr. Becker said

25    it, but just to be clear, that the conspiracy he talked about

O8UDBecP

1    was the false statements to the banks resulted in an FDIC

2    insured bank processing millions of dollars of credit towards

3    accounts that were set up.

4             THE COURT:  How do you respond to that question,

5    Mr. Becker?

6             THE DEFENDANT:  I think the prosecution is accurate.

7             THE COURT:  Let me ask the prosecution, if Mr. Becker

8    were not pleading guilty, what evidence would the government

9    proffer at trial as to his guilt?

10            MR. VAINBERG:  Certainly, your Honor.

11            At trial, the government would prove that from at

12    least 2012 through in or about 2015, Mr. Becker was the CEO of

13    CardReady, LLC, a company that helped merchants obtain credit

14    card processing.  The evidence would show that Mr. Becker

15    participated in a conspiracy with codefendants Steven Short and

16    other employees and agents at CardReady to create false

17    merchant applications and sham merchant accounts to be used by

18    co-defendant Short's telemarketing business.

19            The false applications concealed the true merchant,

20    which is Mr. Short's business, and, instead, presented as straw

21    owners so-called signers, which were people who did not

22    actually run the merchant's business and instead were being

23    paid a nominal amount to sign merchant applications.  The false

24    applications were submitted to a New York City based company

25    named First Base Solutions, which was a processing partner of

O8UDBecP

1  Wells Fargo Bank, an FDIC insured institution.

2           The scheme allowed Short's marketing business to

3  maintain access to the credit card processing system even as

4  the sham merchant accounts were continually shut down due to

5  customer complaints and charge backs.  As a result of the

6  scheme, Wells Fargo processed over $19 million of credit card

7  transactions across 26 sham merchant accounts between in or

8  about 2012 and 2015.

9           Now, at trial, the government will present as evidence

10  testimony from witnesses, including victims, signers, multiple

11  co-conspirators of Mr. Becker, who pleaded guilty to this

12  offense, processing company witnesses, and others.  The

13  government would also present documentary evidence, including

14  the false merchant applications, emails from and to the

15  defendant about the false merchant accounts, text messages,

16  bank records, and processing records.

17           THE COURT:  Mr. Becker, in light of all the foregoing,

18  do you still wish to plead guilty?

19           THE DEFENDANT:  I do.

20           THE COURT:  Why are you pleading guilty?

21           THE DEFENDANT:  Because I'm guilty of every element he

22  just described over here, the prosecution described, your

23  Honor.

24           THE COURT:  Let me ask defense counsel, do you know of

25  any reason why Mr. Becker ought not plead guilty?

O8UDBecP

1          MR. GIORDANO:  No, your Honor.

2          THE COURT:  Having considered the entire record and

3     considering the statements just made by Mr. Becker, I am

4     satisfied that he understands the nature of the charges against

5     him and the consequences of his plea.  The Court also is

6     satisfied that the plea is being made voluntarily and

7     knowingly, and that there's a factual basis for it.

8          Accordingly, I will recommend to Judge Preska that the

9     plea of guilty be accepted.  I assume the government will order

10    a copy of the transcript and will submit it, together with any

11    additional paperwork, so that Judge Preska may act on my

12    recommendation?

13         MR. VAINBERG:  Yes, your Honor.

14         THE COURT:  Will the government deliver the case

15    summary for purposes of the presentence report to the probation

16    department within 14 days?

17         MR. VAINBERG:  We will, your Honor.

18         THE COURT:  Let me ask defense counsel, will you be

19    available to be interviewed by the probation department with

20    your client within 14 days?

21         MR. GIORDANO:  Yes, your Honor.

22         THE COURT:  Has a control date yet been set by Judge

23    Preska for sentencing?

24         MR. VAINBERG:  Not yet, your Honor.

25         THE COURT:  All right.  So we'll set a control date of

O8UDBecP

1    December 30th of this year.

2            Is there anything else from either side?

3            MR. VAINBERG:  No, your Honor.  The government is --

4    the bail conditions should continue in this case.  The

5    government is not making any application to change the bail

6    conditions.

7            THE COURT:  Okay.  Anything else from the defense?

8            MR. GIORDANO:  Nothing further, your Honor.  Thank

9    you.

10           THE COURT:  All right.  This matter is adjourned.

11   Thank you.

12           THE DEFENDANT:  Your Honor, thank you very much.

13           MR. VAINBERG:  Thank you, your Honor.

14           (Adjourned)

15

16

17

18

19

20

21

22

23

24

25